**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**(Charlotte Division)**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **MADISON CONSTRUCTION GROUP, INC.,** | ) Case No. 16-32006 |
| | ) |
| Debtor. | ) |

## PLAN OF REORGANIZATION OF MADISON CONSTRUCTION GROUP, INC.

### PREAMBLE

Debtor Madison Construction Group, Inc. hereby submits this "Plan of Reorganization of Madison Construction Group, Inc." pursuant to Section 1121(a) under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

### ARTICLE I
### DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1    Administrative Claim.  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Claims Bar Date, or (b) Allowed under Section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by Section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under Section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1

1.2    <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred <u>after</u> the Confirmation Date.

1.3    <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4    <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim and if such claim is timely filed), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim.  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5    <u>Aquesta Bank</u>.  Aquesta Bank, having a corporate address of P.O. Box 700, Cornelius, NC 28031.

1.6    <u>Assumed Agreement</u>.  Each of the Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.7    <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.8    <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to Sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.9     Ballot.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.10    Bankruptcy Administrator.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.11    Bankruptcy Code.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

1.12    Bankruptcy Court.  The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.13    Bankruptcy Rules.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.14    Business Day.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.15    Carolinas Millwork Group.  Carolinas Millwork Group, Inc., a North Carolina corporation, the Purchaser.

1.16    Cash.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.17    Chapter 11 Case.  The Debtor's bankruptcy case under Chapter 11 of the Bankruptcy Code which is pending before the Bankruptcy Court (Case No. 16-32006), in which the Debtor is the debtor in possession.

1.18    Claim.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.19    Class.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.20    Closing Date.  The closing date for the Sale shall be the Effective Date.

1.21    Confirmation Date.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

1.22    <u>Confirmation Hearing</u>.   The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.23    <u>Confirmation Order</u>.   An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24    <u>Contingent Claim</u>.   A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.25    <u>Creditor</u>.  Any Person that holds a Claim against the Estate.

1.26    <u>Cure Payment</u>. All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code

1.27    <u>Debtor</u>.  Madison Construction Group, Inc., a North Carolina corporation.

1.28    <u>Disclosure Statement</u>.  The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to Section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.29    <u>Disputed Claim</u>. A Claim which is the subject of a timely objection interposed by a trustee, debtor in possession, or appropriate party in interest, if at such time such objection remains unresolved; <u>provided</u>, <u>however</u>, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code; <u>provided</u>, <u>further</u>, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.30    <u>Disputed Claims Reserve</u>.  The interest bearing reserve account(s) established by the Reorganized Debtor pursuant to Section 8.3 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.31    <u>Distribution Date</u>.  With respect to any Allowed Claim, each date on which a distribution is made with respect to such Allowed Claim, including the Effective Date, on which certain distributions of cash and other assets are to be made by the Estate.

1.32    <u>Effective Date</u>.  The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

1.33    <u>Estate</u>.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.  The property of the Debtor's Estate shall be vested in the Reorganized Debtor upon the occurrence of the Effective Date of the Plan.

1.34   <u>Final Order</u>.  An order which is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.35   <u>Ford Motor Credit</u>.  Ford Motor Credit Company, a secured creditor of the Debtor.

1.36   <u>General Unsecured Claim</u>.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim.  Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim and if such claim is timely filed).

1.37   <u>Membership Interest</u>.  Any interest in the Debtor represented by membership interests or any class or series of capital stock of the Debtor prior to the Petition Date, and any and all warrants, options, convertible or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor.  Membership Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of a Membership Interest, for damages arising from the purchase or sale of such a Membership Interest, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a Claim.

1.38   <u>Non-Tax Priority Claim</u>.  Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.39   <u>Other Priority Claims</u>.  Any Claim to the extent entitled to priority in payment under Sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code and not otherwise classified in this Plan.

1.40   <u>Person</u>.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof, or any other entity.

1.41   <u>Petition Date</u>.  December 15, 2016, the date of the commencement of this Chapter 11 Case.

1.42   <u>Plan</u>.  This Chapter 11 Plan, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.43   <u>Priority Non-Tax Claim</u>.  Any Claim arising prior to the Petition Date entitled to priority in payment under sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.44   <u>Priority Tax Claim</u>.  Any Allowed Claim arising prior to the Petition Date entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.45    Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.46    Professional.    Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with Sections 327 and/or 328 of the Bankruptcy Code.

1.47    Purchaser.  Carolinas Millwork Group.

1.48    Rejected Agreement.  Each unexpired lease or other executory contract of the Debtors which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

1.49    Reorganized Debtor.  The Debtor, as reorganized and re-vested with all of the assets of the Debtor's Estate pursuant to this Plan.

1.50    Sale.  The sale of the Debtor's property as proposed in this Plan.

1.51    Sale Assets.  All property of the Debtor, together with all executory contracts and leases identified on "Schedule 5.1: Executory Contracts and Unexpired Leases to be Assumed", which Schedule may be modified in accordance with the terms hereof.

1.52    Sale Proceeds.  All proceeds of the Sale of the Debtor's Sale Assets.

1.53    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor with the Bankruptcy Court in accordance with Section 521(a)(l) of the Bankruptcy Code.

1.54    Secured Claim.  A Claim, to the extent of the value of any interest in property of the Estate securing such Claim, as determined pursuant to Section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.55    Taxes.    All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments and governmental charges, together with any interest, penalties, additions to tax, fines and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

1.56    Unsecured Claim.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.57    Unsecured Deficiency Claim.  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by Section 506(a) of the Bankruptcy Code.

1.58    Voting Deadline.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.59    Yadkin Bank.  Yadkin Bank, a secured creditor of the Debtor.

1.60    Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS

2.1    *Administrative Claims and Priority Tax Claims are Not Classified in this Plan*. Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan.  The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Allowed Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    *Administrative Claims Bar Date*.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtor and the Bankruptcy Administrator no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such

7

request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred <u>after</u> the Confirmation Date.

2.3     ***Treatment of Administrative Claims***.   Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Administrative Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Administrative Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4     ***Treatment of Priority Tax Claims***.   Each holder of an Allowed Priority Tax Claim, shall be paid the Allowed amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in Cash payments commencing forty-five (45) days after the Effective Date, in equal quarterly installments within five (5) years from the Petition Date, and in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT
## <u>OF CLAIMS AND INTERESTS</u>

3.1     ***Class 1: Non-Tax Priority Claims.***

    3.1.1   *Classification.*

Class 1 consists of all Allowed Non-Tax Priority Claims.

    3.1.2   *Treatment.*

Each holder of an Allowed Non-Tax Priority Claim shall be paid the Allowed amount of its Allowed Non-Tax Priority Claim in full, in Cash, on the Effective Date or as soon as practicable thereafter from the Sale Proceeds.

    3.1.3   *Impairment and Voting.*

Class 1 is not impaired by the Plan. The holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

3.2     ***Class 2:  Secured Tax Claims***.

3.2.1   *Classification.*

Class 2 consists of all Allowed Secured Tax Claims.

3.2.2   *Treatment.*

Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim in full, in Cash, on the Effective Date or as soon as practicable thereafter from the Sale Proceeds.

3.2.3   *Impairment and Voting.*

Class 2 is not impaired by the Plan. The holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

3.3     ***Class 3: Yadkin Bank's Secured Claims.***

3.3.1   *Classification.*

Class 3 consists of Yadkin Bank's Secured Claim.

3.3.2   *Treatment of Secured Portion of Yadkin Bank's Claim.*

As of the Petition Date, the total amount of Yadkin Bank's Secured Claim was $236,861.11.

Yadkin Bank's Allowed Secured Claim shall be paid by the Purchaser as follows: post-confirmation interest shall accrue on Yadkin Bank's Allowed Secured Claim at the interest rate of 5% per annum; the Allowed Secured Claim shall be amortized over a 60 month term; and each monthly payment shall be delivered to Yadkin Bank on or before the last day of each month beginning with the first such day to occur following the Effective Date and continuing for a total of sixty (60) months.  The Purchaser may execute and deliver a promissory note to Yadkin Bank consistent with the terms set forth herein.  For the avoidance of doubt, Yadkin Bank shall retain its security interests in its collateral to the same extent and to the same priority as it held prepetition and shall further retain the right to credit bid to protect its interests.

3.3.3   *Impairment and Voting.*

Class 3 is impaired by the Plan.  The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

3.4     ***Class 4: Ford Motor Credit's Secured Claims.***

3.4.1   *Classification.*

Class 4 consists of Ford Motor Credit's Secured Claims.

3.4.2   *Treatment.*

(a)     *Amount of Ford Motor Credit's Claims:*

As of the Petition Date, the total amount of Ford Motor Credit's Allowed Secured Claims was $115,459.11.

(b)     *Treatment of Ford Motor Credit's Claims:*

Ford Motor Credit shall, at its election, either:

(i)     Be permitted to foreclose upon its liens upon the Effective Date; or

(ii)    Receive payment from the Purchaser on its Allowed Secured Claims at the rates and terms set forth in the pre-petition loan documents existing by and between Ford Motor Credit and the Debtor, as attached to Ford Motor Credit's proofs of claim in this Bankruptcy Case and incorporated herein by reference. The Purchaser may execute such documents as agreed upon between such party and Ford Motor Credit to evidence the terms stated herein.  For the avoidance of doubt, Ford Motor Credit shall retain its purchase money security interests in its collateral to the same extent and to the same priority as it held prepetition.

3.4.3   *Impairment and Voting.*

Class 4 is impaired by the Plan.  The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

3.5     ***Class 5: Advantage Machinery's Secured Claim.***

3.5.1   *Classification.*

Class 5 consists of Advantage Machinery's Secured Claim.

3.5.2   *Treatment.*

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

(a)     *Amount of Advantage Machinery's Secured Claim:*

Advantage Machinery has asserted a Secured Claim in the amount of $45,693.37.

(b)     *Treatment of Advantage Machinery's Secured Claim:*

Advantage Machinery shall be permitted to foreclose upon its asserted liens upon the Effective Date.

### 3.5.3   *Impairment and Voting.*

Class 5 is impaired by the Plan.  The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### 3.6     **Class 6: Carter Lumber's Secured Claim.**

### 3.6.1   *Classification.*

Class 6 consists of Carter Lumber's Secured Claim.

### 3.6.2   *Treatment.*

(c)     *Amount of Carter Lumber's Secured Claim:*

As of the Petition Date, the amount of Carter Lumber's Secured Claim was scheduled as $1,143,023.66, a substantial portion of which has been paid by the Debtor throughout the course of the Bankruptcy Case as authorized by the Bankruptcy Court. The Debtor estimates that the remaining amount due to Carter Lumber is approximately $500,000.00.

(d)     *Treatment of Carter Lumber's Secured Claim:*

Carter Lumber's Allowed Secured Claim shall be paid by the Purchaser as follows: in equal monthly payments delivered to Carter Lumber on or before the last day of each month beginning in the month of the Effective Date of the Plan and continuing through December 31, 2018.  The Reorganized Debtor or Purchaser, as appropriate, may execute and deliver such documentation to Carter Lumber consistent with the terms set forth herein.

### 3.6.3   *Impairment and Voting.*

Class 6 is impaired by the Plan.  The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

11

3.7    ***Class 7: Allowed General Unsecured Claims.***

    3.7.1    *Classification.*

Class 7 consists of all Allowed General Unsecured Claims.

    3.7.2    *Treatment.*

Class 7 shall receive any amount remaining from the Net Sales Proceeds, which is anticipated to result in no distribution.

    3.7.3    *Impairment and Voting.*

Class 7 is impaired by the Plan.  The holders of Class 7 Claims are deemed not to have accepted the Plan.

3.8    ***Class 8: Membership Interests in the Debtor***.

    3.8.1    *Classification.*

Class 8 consists of the Membership Interests in the Debtor.

    3.8.2    *Treatment*.

Christopher Mezzanotte and Bonnie Benedum were the holders of Membership Interests in the Debtor as of the Petition Date.  Neither Mr. Mezzanotte nor Mrs. Benedum shall retain membership or be compensated for their membership interests in connection with the Plan.

    3.8.3    *Impairment and Voting.*

Class 8 is impaired by the Plan.  The holders of Class 8 Claims are deemed not to have accepted the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1    ***Impaired Classes Vote.***  Each holder of a Claim or interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2    ***Acceptance by Impaired Classes of Claims.***  Acceptance of this Plan by any impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the

Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3    ***Designation of Classes Entitled to Vote.***  Classes 3, 4, 5, and 6 are impaired, and the holders of Claims and interests in those Classes are entitled to vote on the Plan.

4.4    ***Nonconsensual Confirmation.***  With respect to any Impaired Class, including any Class of Claims or interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan using the cramdown provision of § 1129(b) of the Bankruptcy Code with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    ***Rejection of Contracts Not Previously Assumed.***  Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, shall be deemed rejected as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule 5.1: Executory Contracts and Unexpired Leases to be Assumed" (to be filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously assumed by the Debtor pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for assumption of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Assumed" prior to the Effective Date.  Nothing in the Plan, any exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such exhibit creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed and assigned to the Purchaser as of the Effective Date and shall be fully enforceable by the Purchaser in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.

The Debtor reserves the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Assumed" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Assumed," thus providing for its rejection under the Plan, or (b) add any

executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Assumed," thus providing for its assumption under the Plan. The Debtor shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Assumed" to the other party or parties to the affected executory contract and/or unexpired lease, and to the Bankruptcy Administrator.

5.2    ***Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance.*** Cure Payments for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor or otherwise addressed elsewhere in this Plan, shall be made by the Debtor prior to the Effective Date or by the Purchaser on the Effective Date. **The Debtor hereby gives notice that, consistent with Schedule 5.1, there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed by the Debtor under the Plan. Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to the assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.** Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease. Any Claims for Cure Payments not filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, the Estate, the Reorganized Debtor, and/or the Purchaser, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Purchaser to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor: (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court or (ii) the Debtor may reject such executory contract or unexpired lease as of the Effective Date. If not previously made, the Purchaser shall make any Cure Payment on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order, provided however that the Purchaser shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Assumed" to withdraw from the assumption of such executory contract or unexpired lease

14

and, in such an event, such executory contract or unexpired lease shall be deemed rejected.

     5.3    ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, the Estate, and all parties in interest.  In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor and its Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, (v) the counterparty to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease, and (vi) each executory contract or unexpired lease is assigned to Purchaser.  All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtor, prior to assignment and enforceable by the Purchaser, following assignment, against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

     Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Estate.

     5.4    ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.***  Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtor and/or the Estate and their assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

     6.1    ***Distributions Under the Plan.*** The Purchaser, or at the option of the Purchaser, any distribution agent the Purchaser may retain, shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan.  Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter.  If any litigation

now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

6.2     ***Delivery of Distributions.*** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtor's records.  In the event that any such distribution is returned as undeliverable, the Purchaser shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Purchaser has determined such then current address, <u>provided, however</u>, that if any distribution remains unclaimed after the first anniversary of such distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Purchaser. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim.  Checks issued by the Purchaser in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

6.3     ***Third Party Agreements.*** The distributions to the various Classes of Claims or Interests hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination or lien priority rights or otherwise.  All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4     ***Manner of Payment under the Plan.*** At the option of the Purchaser, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5     ***No Fractional Distributions.*** No fractional dollars shall be distributed under the Plan.  For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.  In no event shall such rounding result in a claim against the Purchaser for additional amounts due or a claim that the Purchaser has defaulted under the Plan.

6.6     ***Withholding and Reporting.*** The Purchaser shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

7.1     *Implementation Plan.*

The Debtor is a full-service subcontractor that has offered turnkey packages for carpentry, millwork, doors, hardware, and specialty installations. The Debtor's operations are based in Pineville, with projects in several states. Prior to the Petition Date, the Debtor became party to several lawsuits, which resulted in significant time and other burdens on the Debtor's management, defense costs to the Debtor, and exceedingly high insurance premiums for the Debtor. As a result of its high pre-petition insurance premiums, the Debtor's cash flow was limited in the months prior to the Petition Date, resulting in high unpaid receivables to its primary subcontractors and suppliers. The preceding factors were the predominate cause for the Debtor filing the Bankruptcy Case. During the course of the Bankruptcy Case, the Debtor determined that it was necessary to find new ownership for the Debtor, which, among other benefits, would allow the company to acquire insurance at normal market rates. The Debtor conducted a lengthy search for parties interested in purchasing the Debtor or the Debtor's assets, particularly including its current contracts. The Debtor identified several interested parties; however, only one potential purchaser was able to confirm the availability of the funds necessary to purchase the Assets in a timely manner, the Purchaser.

The Purchaser will deliver $250,000.00 in cash for the Sale Assets, which will be distributed to the holders of Allowed Claims in the order set forth herein. Additionally, the Purchaser will assume the Debtor's secured liabilities in connection with the Ford Motor Credit Allowed Claim and the Yadkin Bank Allowed Claim.

7. 2     *Identity of Insiders to be Employed.* As of the Petition Date, Bonnie Benedum, Christopher Mezzanotte, and James Mezzanotte were insiders and employees of the Debtor, all of whom have continued to serve their roles during the course of the Bankruptcy Case. It is anticipated that the Purchaser will retain Christopher Mezzanotte and James Mezzanotte to continue in their roles following the Effective Date.

7.3     *Authority to Act Following Confirmation Date.* Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan.

7.4     *Authority to Act Following Effective Date.* As of the Effective Date, the Purchaser shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

7.5     ***Status of Liens of Secured Tax Claims, First Lien Lender, and Other Lien Claimants.*** Unless otherwise provided in this Plan, or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Claimant on the Estate assets shall retain the same validity, priority and extent that existed on the Petition Date.  All other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

## ARTICLE 8
## RESOLUTION OF CLAIMS AND INTERESTS

8.1  ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Purchaser, shall have the exclusive right to object to the allowance, amount or classification of Claims and interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or the Purchaser, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or the Purchaser, as applicable, without further order of the Bankruptcy Court.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and interests shall be filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Purchaser, without notice, upon ex *parte* motion.

8.2     ***Estimation of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Purchaser, may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim or interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Purchaser have previously objected to such Claim or interest.  The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3     ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.  The Purchaser shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed interests in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims and interests were ultimately to be allowed in full by Final Order.

8.4     ***506(b) Claims.*** Any Claimant asserting a 506(b) Claim in this Chapter 11 Case shall file an application to allow such 506(b) Claim on or before the date occurring thirty (30)

days following the Effective Date. Unless otherwise provided in the Plan or mutually agreed upon between the relevant holder of a 506(b) Claim and the Purchaser, all Allowed 506(b) Claims shall be combined with the Allowed Secured Claim of the relevant Claimant and shall be paid in accordance with the overall payment terms of Article 3.  Any Person entitled to file and serve a request for payment of a 506(b) Claim who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1     *Ownership.*  On account of the cash amounts paid by the Purchaser, as well as the ongoing secured liabilities assumed by the Purchaser, the Purchaser shall be deemed the sole owner of the Sale Assets as of the Effective Date.

9.2     *Vesting of Assets and Retained Causes of Action - The Purchaser.* On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all Sale Assets shall vest in the Purchaser free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order.  From and after the Effective Date, the Purchaser may operate its business and may own, use, acquire and dispose of assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed.

Except as otherwise specifically provided in this Plan, the Purchaser shall retain all rights and is authorized to commence and pursue, as the Purchaser deems appropriate, any and all claims and causes of action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan or any Plan exhibit, and the Purchaser shall not be required to seek further approval of the Bankruptcy Court for such actions.

9.3     *Binding Effect.* Subject to the occurrence of the Effective Date, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.4     *Discharge of the Debtor.* Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the debtor in possession, the Purchaser, or the assets, properties, or interests in, or property of the Debtor, the debtor in possession, or the Purchaser of any nature whatsoever, including any interest accrued on any

19

Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Debtor, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Purchaser shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the debtor in possession, or the Purchaser, or the assets, properties, or interests in or property of the Debtor, the debtor in possession, or the Purchaser of any nature whatsoever, any Claims or interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

9.5     **_Indemnification Obligations._** Subject to the occurrence of the Effective Date, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Purchaser pursuant to the Plan and Section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.6     **_Term of Certain Injunctions._** Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it may deem necessary or appropriate to preserve the _status quo_ during the time between the Confirmation Date and the

Effective Date.

9.7    ***No Successor Liability.*** Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtor nor the Purchaser will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries, employees, or agents relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, employees, or agents, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Purchaser shall not have successor or transferee liability of any kind or character, for any Claims; *provided, however,* that the Purchaser shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

9.8    ***Preservation of All Causes of Action Not Expressly Settled or Released.*** For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Section 9.2 "Vesting of Assets and Retained Causes of Action," unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Purchaser expressly reserves such claim or cause of action for adjudication or pursuit by the Purchaser after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Purchaser shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and causes of action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Purchaser subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

# ARTICLE 10
## <u>EFFECTIVE DATE OF THE PLAN</u>

10.1 ***Conditions to Occurrence of Effective Date of Plan.*** The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date, which is intended to be March 1, 2018. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtor.

10.1.1 The Confirmation Order shall have become a Final Order.

10.1.2 The Bankruptcy Court shall have made the statutorily required findings of fact and conclusions of law in connection with the confirmation of this Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

10.1.3 All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by non-debtor parties in form and substance satisfactory to the Debtor.

10.1.4 Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

Notwithstanding anything herein to the contrary, if the Debtor has not filed a notice of the occurrence of the Effective Date prior to April 1, 2018, and if the conditions as set forth in Sections 10.1.1 and 10.1.2 have occurred, then the Effective Date shall be deemed to be April 1, 2018.

10.2 ***Estimated Effective Date.*** Provided that the conditions of Section 10.1 above have been satisfied on or before March 1, 2018, the Effective Date shall be March 1, 2018.

10.3 ***Filing of Notice of Effective Date.*** Within five (5) Business Days of the occurrence of the Effective Date, the Purchaser shall file a notice of occurrence of the Effective Date in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtor and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

10.4 ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case.  If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, (i) the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 ***Payment of Statutory Fees.*** All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date by the Debtor, as, when and in the amount required by applicable law.

11.2 ***Notice.*** Any notice required or permitted to be provided to the Debtor, the or the March 1, 2018 under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> ***Debtor***:
>> Madison Construction Group, Inc.
>> c/o Melanie Johnson Raubach
>> Hamilton Stephens Steele + Martin, PLLC
>> 525 North Tryon Street, Suite 1400
>> Charlotte, NC 28202

> ***Purchaser***:
>> Carolinas Millwork Group, Inc.
>> 520 Eagleton Downs Dr., Suite A
>> Pineville, NC 28134

11.3 ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4     ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5     ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6     ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor, and the Purchaser will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7     ***Exemption from Transfer Taxes***. Pursuant to Section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

11.8     ***Further Authorizations.*** The Debtor and, after the Effective Date, the Purchaser, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.9     ***Successors and Assigns.*** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.10   ***Modification and Amendment of the Plan.*** Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Purchaser.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1    ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which the Debtor is party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2    ***Causes of Action.*** To determine any and all causes of action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Purchaser after the Effective Date.

12.3    ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent interest, disputed interest in whole or in part, and to determine any and all disputes among Creditors and holders of interests with respect to their Claims and interests.

12.4    ***Enforcement/Modification of Plan.***

12.4.1  To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2  To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3  To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4  To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

12.4.5  To hear and determine any issue relating to distributions under the Plan.

12.4.6  To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization

12.4.7  To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.5     *Compensation of Professionals.*  To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

12.6     *Settlements.*  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or cause of action by the Debtor or the Purchaser.

12.7     *Taxes.*  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

12.8     *506(b) Claims.*  To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

12.9     *Specific Purposes.*  To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10   *Final Decree.*  To enter an order or final decree closing the Chapter 11 Case.

[End of Document]

Dated: Charlotte, North Carolina
      January 2, 2018

Respectfully submitted,

MADISON CONSTRUCTION GROUP, INC.

By:   /s/ Christopher Mezzanotte
     Christopher Mezzanotte

HAMILTON STEPHENS STEELE
+ MARTIN, PLLC

 /s/ Melanie D. Johnson Raubach
Melanie D. Johnson Raubach (Bar No. 41929)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
mraubach@lawhssm.com
*Counsel for the Debtor*

26

## Schedule 5.1 to Plan of Reorganization
## Additional Executory Contracts / Unexpired Leases

Counterparty to Executory Contract/
    Unexpired Lease                  Description                Cure Amount Due

    TBD

{00389147.DOCX V.2 M527.024195;}
Madison Construction Group, Inc. Plan of Reorganization